

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2005

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wang v. Atty Gen USA" (2005). *2005 Decisions.* Paper 267.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/267

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-4082

———————

DA WANG,

Petitioner

v.

Attorney General of the
United States

Respondent

————————

On Petition for Review of the Decision
of the Board of Immigration Appeals

Agency No. A96 204 249

————————

Submitted Under Third Circuit L.A.R. 34.1(a)
October 21, 2005

Before: SCIRICA, Chief Judge, VAN ANTWERPEN and ALDISERT, Circuit Judges.

(Filed: November 3, 2005)

————————

OPINION OF THE COURT

————————

ALDISERT, Circuit Judge.

This petition for review of the final order of the Board of Immigration Appeals ("BIA") asks us to decide (1) whether the Petitioner, Da Wang ("Wang"), a native and citizen of the People's Republic of China, was properly placed in asylum-only proceedings, and (2) whether substantial evidence supports the Immigration Judge's ("IJ") adverse credibility determination. We have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252. We will deny the petition.

## I.

Because we write only for the parties, who are familiar with the facts, procedural history and contentions presented, we will not recite them except as necessary to the discussion.

## II.

Wang testified that he left China to come to the United States because of "Falun Gong persecution." When asked how he was persecuted, he replied: "I practice the Falun Gong organization. I suffered persecution." He testified that a friend introduced him to the organization in July 2002 by taking him to a "gathering," and contended that he did not know that he had attended a Falun Gong meeting until afterwards. When asked what he did at the gathering, he said it was "like a birthday party."

During cross-examination, Wang said that someone spoke about Falun Gong during the meeting. When asked to reconcile his testimony that he did not pay attention at the meeting and had to be told afterwards that it was a Falun Gong meeting, Wang was

2

unable to explain this contradiction.

Wang testified that on March 2, 2003, he learned from his mother that his friend was arrested and beaten by "public security" officials. He was also told by his mother that a public security guard visited his home looking for him. Although his mother was not told why they were looking for him, she advised him to go live with his grandmother.

Wang testified that public security continued to visit his home while he was living with his grandmother. Thereafter, Wang's mother told him to go to Inner Mongolia. Wang testified that he worked in a steel factory there from April 1, 2003 to October 22, 2003, and that he decided to leave the country after three public security officials, one of whom he recognized as being from his home town, arrived at the factory. He contended that they were looking for him, but when asked how these officials could have found him in Inner Mongolia, Wang conceded that he did not know.

The IJ made an adverse credibility determination based on numerous factual findings[1] and denied Wang's application for asylum and withholding of removal. The IJ

---

[1] The IJ found that: (1) Wang did not adequately explain exactly what he was doing during the meeting if it is true, as he contends, that he did not listen to the speakers and did not realize that the meeting was a Falun Gong meeting; (2) he first testified that he did not listen to speakers at the meeting and did not know the purpose of the meeting, but later testified that he was aware that the speakers were discussing Falun Gong; (3) his testimony that he attended six Falun Gong meetings conflicts with his statement in his asylum application that he attended "a couple" of meetings; (4) his testimony that he did not actually practice Falun Gong is inconsistent with his testimony that (a) he attended six meetings and (b) he meditated along with the other people at the meeting; (5) he testified that he attended an English language school from 1996 to 1999, but in his asylum application he said he attended the school from 1999 to 2002; (6) it is implausible that he

3

also concluded that Wang failed to meet his burden of proof under the Convention Against Torture.[2]

## III.

Falun Gong literally means "practice of the wheel of law."  It is a Chinese spiritual practice with beliefs similar to Buddhism and Taoism.  The actual number of followers is a matter of dispute.  The organization itself claims to have 100 million followers, including 70 million inside China.  Current official Chinese estimates put the number at approximately 10 million.

The People's Republic of China, led by the Chinese Communist Party, became concerned with the ability of Falun Gong practitioners to gather in large demonstrations almost instantaneously.  On July 20, 1999, the government began a nationwide

---

would be able to arrange to be smuggled out of China in a mere four days because it usually take months to complete arrangements; (7) his testimony reveals that he "knows virtually nothing about the practice" of Falun Gong notwithstanding having attended six meetings; (8) he nodded his head when questions were posed to him in English before the translation, suggesting that he knows more English than he lead the IJ to believe and that his real reason for coming to the United States was to live with his father, who resides here; and (9) he attributed the public security's search for him to his attendance at the meeting without making any investigation into whether that was the true reason.

[2] A claim for relief under the Convention Against Torture is "analytically separate" from both asylum and withholding of removal under the INA.  Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003).  Accordingly, an adverse credibility finding for purposes of denying asylum and withholding of deportation claims does not preclude a petitioner from establishing a claim for relief under CAT.  Id.  Wang, however, has not meaningfully challenged the denial of his CAT claim before this Court, and it is therefore waived.  See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

suppression of Falun Gong. It referred to the practice as an "evil cult" spreading superstition to deceive the people. The Chinese Communist Party claims that Falun Gong has deviated its focus from engaging in spiritual cultivation to engaging in politics, basing its opinion on the existence of numerous web sites unconnected to, yet in support of, Falun Gong.

IV.

Wang first challenges his placement in asylum-only proceedings pursuant to 8 U.S.C. § 1187, which codifies the Visa Waiver Program ("VWP"). Under the VWP, the Attorney General and the Secretary of State are permitted to allow aliens from certain countries to enter the United States for up to ninety days without a visa. Aliens who are admitted or apply for admission under the program agree to forfeit any challenge to removal, except on the basis of asylum.

Wang, however, did not raise a challenge to his placement in asylum-only proceedings with either the IJ or the BIA.[3] Accordingly, we lack jurisdiction to consider this contention. See 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal

_____

[3] Wang appears not to have understood that he had been placed in asylum-only proceedings until the BIA noted in its decision that the IJ had erroneously ordered him removed. The Administrative Record, however, shows that, prior to appearing before the IJ, Wang and his attorney were served with four separate hearing notices entitled "Notice of Asylum-Only Hearing." In addition, attached to one of the Notices is a Form I-863 Notice of Referral to an Immigration Judge, which states that Wang is a VWP applicant. Accordingly, we are satisfied that Wang did have notice that he had been placed in asylum-only proceedings, and should have challenged this classification before the IJ and the BIA.

only if . . . the alien has exhausted all administrative remedies available to the alien as of right."); Zheng v. Gonzales, 422 F.3d 98, 107-108 (3d Cir. 2005) ("The failure to exhaust this claim before the BIA 'bars consideration of particular questions not raised in an appeal to the Board.'") (citations omitted).

Moreover, even if we did have jurisdiction to review Wang's challenge to his placement in asylum-only proceedings, we would reject it. Wang signed an 1-94W Visa Waiver Form and attempted to enter the United States as a VWP applicant using a fraudulent Japanese passport.[4] Under 8 C.F.R. § 217.4(a)(1), an alien who applies for admission under the VWP and presents fraudulent travel documents is to be refused admission and placed in asylum-only proceedings. Accordingly, Wang was properly placed in asylum-only proceedings.

V.

We must next determine whether the IJ correctly found that Wang's testimony was not credible. Because the BIA adopted and affirmed the IJ's decision, we review the IJ's decision. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).

An asylum applicant bears the burden of supporting his claim through credible testimony. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We review an adverse

---

[4] Because Wang is a Chinese national and China is not a VWP country, he was not actually eligible for admission under the VWP. See 8 U.S.C. § 1187(b) (requiring that an alien be "a national of, and presents a passport issued by," a program country). By signing the Visa Waiver Form and presenting a Japanese passport, however, he qualifies as an applicant and is therefore subject to 8 C.F.R. § 217.4(a)(1).

credibility finding under the substantial evidence standard, meaning that we will uphold the IJ's findings "to the extent that they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (quoting INS v. Elias-Zacarias, 502 U.S. 478 (1992)).

An adverse credibility finding should be supported by specific, cogent reasons for disbelieving the petitioner's testimony. Id. at 161-162. The IJ will not be reversed merely because this Court disagrees with the IJ's evaluation of the facts; it will be affirmed so long as the IJ's conclusion is substantially reasonable. Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir.2003) (en banc) (citing El Moraghy v. Ashcroft, 331 F.3d 195, 202 (3d Cir. 2003)). Deference to an adverse credibility finding, however, "'is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record.'" Id. (quoting El Moraghy, 331 F.3d at 202).

Here, we conclude that the IJ reasonably denied Wang's asylum and withholding of removal applications because he failed to carry his burden to prove his statutory eligibility with credible, direct and specific evidence. The discrepancies, contradictions and implausibilities in Wang's testimony go to the heart of his claim. As the IJ noted, it is relatively easy for an asylum-seeker to falsely claim persecution based on perceived membership in a group such as Falun Gong. An applicant need not actually know anything about Falun Gong, but may claim eligibility because of the Chinese government's crackdown on perceived supporters. Wang's inconsistencies regarding the number of

7

meetings he attended, his vague descriptions of what occurred at the meetings, and his lack of knowledge regarding Falun Gong after having allegedly attended six meetings all undermined his credibility before the IJ.

In his brief, Wang has failed to specifically challenge any of the numerous deficiencies detailed by the IJ. Even if we were to concede that some of the inconsistencies and implausibilities cited by the IJ can be explained by Wang's confusion or are based on inferences not grounded in the record, when Wang's testimony is considered in total it provides sufficient support for the IJ's adverse credibility determination.

Accordingly, we conclude that the IJ's denial of Wang's asylum claim was supported by substantial evidence. Because the standard for withholding of removal is more stringent than that for asylum, we also conclude that Wang's application for withholding of removal was properly denied. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003) ("The standard for withholding of removal is higher than, albeit similar to, the standard for asylum. . . . If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal under [the INA].").

## VI.

We have considered all of the arguments raised by the parties and conclude that no further discussion is necessary. The petition for review will be denied.

8